## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MICHAEL HERNANDEZ-SANTANA,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 24-CV-6447** |
| | : | |
| **DR. PAUL LITTLE, *et al.*,** | : | |
| **Defendants.** | : | |

## MEMORANDUM

**MCHUGH, J.**                                                         **SETPEMBER 3, 2025**

In a prior Memorandum, the Court dismissed claims in this case that were originally
stayed pending the resolution of the Chapter 11 petition filed by Wellpath Holdings, Inc. that
Plaintiff Michael Hernandez-Santana asserted against Wellpath employees Dr. Paul Little and
John Nicholson.[1]  *See Hernandez-Santana v. Little*, No. 24-6447, 2025 WL 1844304, at *1 (E.D.
Pa. July 2, 2025).  The claims against Defendants Little and Nicholson[2] were dismissed because
Hernandez-Santana, then an inmate at SCI Chester ("SCIC"), failed to allege facts supporting
plausible Eighth Amendment claims based on deliberate indifference to his serious medical
needs.  *Id.* at *3.  He was granted leave to file an amended complaint if he was able to cure the
defects the Court identified in his claims.  Mr. Hernandez-Santana filed an Amended Complaint
on August 18, 2025 (ECF No. 22) asserting constitutional claims and a violation of the Health

---

[1] In a separate decision not involving the Wellpath employees, Hernandez-Santana's
constitutional claims against Defendant Mr. E. Reason were dismissed with prejudice and state
law claims were dismissed without prejudice.  *Hernandez-Santana v. Little*, No. 24-6447, 2024
WL 5250350, at *1 (E.D. Pa. Dec. 30, 2024).

[2] While Hernandez-Santana refers to Nicholson as a doctor, the Court understands him to
be employed as a Physician's Assistant at SCIC.

Insurance Portability and Accountability Act ("HIPAA").  Because many of his claims are not

plausible, the Amended Complaint will be dismissed in part and one claim will be served for a

responsive pleading.

## I.    FACTUAL ALLEGATIONS[3]

During lunch on Tuesday, August 22, 2023, Mr. Hernandez-Santana allegedly ingested

pieces of metal that were in his hamburger.  (Am. Compl. at 2.)  He felt a hard piece while

chewing and spit out metallic pieces.  (*Id.*)  He was taken to the SCIC medical unit where,

assisted by a correctional officer Spanish language translator, Dr. Little examined him for

injuries.  (*Id.*)  Little ordered two Ex-Lax pills for Hernandez-Santana, but failed to take an x-ray

even though Little had an x-ray machine available to use at SCIC.  (*Id.*)  In a grievance he filed,

Hernandez-Sanatana asserted that a non-defendant nurse made a "personal judgement" that he

did not swallow any of the metal pieces.[4]  (*Id.*)  Nearly two months later, Hernandez-Santana

---

[3] Hernandez-Santana submitted a typewritten Amended Complaint to which he attached exhibits.  The Court considers the entire submission to constitute the Amended Complaint and adopts the sequential pagination assigned to it by the CM/ECF docketing system.  The factual allegations set forth in this Memorandum are taken from Amended Complaint.  Where the Court quotes from the Amended Complaint, punctuation, spelling, and capitalization errors will be cleaned up.  The Court is cognizant that Hernandez-Santana's first language is Spanish and he asserts he is not fluent in English.

[4] Hernandez-Santana attached to his Amended Complaint Grievance # 1051739 dated September 4, 2023, in which he grieved the August 22, 2023 medical treatment he received after the incident involving his hamburger.  (Am. Compl. at 11.)  He complained that, at approximately 11:23 am, he discovered a metal object in his hamburger at lunch and he contacted a correctional officer who sent him to the medical unit.  (*Id.*)  The medical department sent him back to his housing unit with no further treatment even though he had cuts and red marks on his tongue, gums, and inside cheeks and had a prior injury to his upper intestine and stomach which was "possibl[y] damaged by the consumption of these metal objects."  (*Id.*)  On a separate page, he states further that at 2:45 pm, he was experiencing a sharp pain in his stomach and alerted a correctional officer who sent him to the medical unit (it is unclear if he claimed he went to medical twice).  (*Id.* at 12.)  He was seen by Dr. Little who determined that he had lost a dental filling while eating, referred him to the dentist, and gave him two Ex-Lax pills.  (*Id.*)  The attachment shows that he did not mention the allegation about the non-defendant nurse in the

was seen by Defendant Nicholson on Thursday, October 19, 2023 and then by Dr. Little on

Friday, October 27, 2023 for complaints of stomach pain. (*Id*. at 3.) He appears to assert that he

was taken to an emergency room because Little lacked "minimum experience" to order an onsite

x-ray, and returned to SCIC with discharge instructions for treatment. (*Id*.) Little assessed

Hernandez-Santana's complaints of rectal bleeding from October 28 to October 30 using blood

tests, but Hernandez-Santana claims he was not qualified to reach a medical conclusion about his

abdominal pain and rectal injury. (*Id*.) He complains that if Little was qualified, he would not

have had to have waited 67 days before being sent to the emergency room. (*Id*. at 4.) He also

asserts that Dr. Little acted with deliberate indifference when he assessed that Hernandez-

Santana did not need further medical treatment, apparently referring to hospital discharge

instructions that Little failed to follow.[5] (*Id*. at 3-4.)

      Mr. Hernandez-Santana filed a grievance about the treatment he received from Nicholson

during the sick call on October 19, 2023. (*Id*. at 4.) He complained that Nicholson lacked

qualifications to treat him for his complaints of abdominal pain and rectal bleeding and, because

---

grievance. The grievance was denied on initial review and on appeal to the facility manager.
(*Id*. at 13-15.) It is unclear whether Hernandez-Santana received a final review of the grievance
denial.

     [5] Hernandez-Santana also filed Grievance # 1061001 on November 8, 2023 complaining
about the treatment he received from Dr. Little on October 30, 2023 following his treatment at
the outside hospital due to his stomach pain and rectal bleeding. (*Id*. at 19.) He alleged his
condition was a result of ingesting the metal pieces in his hamburger and complained that Dr.
Little "refused to follow up" on the treatment prescribed by the hospital. (*Id*.) He stated that
Little denied him "the medication that was prescribed by the outside Doctor to 'calm' the pain he
was experiencing for quite some time." (*Id*.) His grievance was denied on initial review because
records showed that Defendant Nicholson evaluated Hernandez-Santana on October 28, 2023
and his notes indicated that lab reports were normal showing no sign of bleeding, and because
Dr. Little's notes from his October 30 examination indicated an abdominal exam was normal.
(*Id*. at 20.) This grievance was also denied on appeal to the facility manager and on final review.
(*Id*. at 21-25.)

Nicholson did not understand him due to the language barrier, utilized an inmate to translate for him in violation of doctor-patient confidentiality.[6]  (*Id*. at 5.)  Mr. Hernandez-Santana asserts that Nicholson's use of an inmate translator to direct him to remove his pants and underwear in order to conduct a rectal exam was cruel and unusual punishment and, while he asserts he did not refuse medical treatment, also asserts that he "refuse[d] being humiliated by Defendant Nicholson's deliberate indifference for his medical competency training not releasing medical instructions for [the other] inmate to interpret to injury."  (*Id*. at 5 and 7.)  He claims the grievance process result agreed that Nicholson was not permitted to have another inmate act as a medical interpreter.[7]  (*Id*. at 5-6.)  Hernandez-Santana asserts that Nicholson is also liable

---

[6] Also attached to Hernandez-Santana's Amended Complaint are excerpts from the DOC policy on the credentialing of physician assistants involved in inmate health care (*id*. at 27-28), excerpts of the policy on use of translators in medical department initial intake and screening procedures (*id*. at 40), and its policy on the release of information (*id.* at 42-44).

[7] Hernandez-Santana attached to his Amended Complaint Grievance # 1061004 that he filed on November 8, 2023 concerning the sick call request on October 19, 2023.  He complained that Nicholson violated the HIPAA law by involving an inmate to act as a translator during his examination and that he objected to Nicholson performing a "cavity search."  (*Id*. at 30.)  While acknowledging that Nicholson requested an inmate to interpret due to Hernandez-Santana's limited English, the grievance was denied because "[a]t any point you could have refused the interpreter and asked for another.  The interpreter does not need to be a medical staff member." (*Id*. at 31.)  The reviewer concluded there was no violation of HIPAA because Hernandez-Santana permitted the inmate to interpret, and noted that Hernandez-Santana was offered a rectal exam (as opposed to a "cavity search") and that he refused to undergo the examination.  (*Id*.) His appeal was denied by the facility manager who noted the exam was not a "cavity search." (*Id*. at 33.)  On final review, the Chief Grievance Officer upheld the result in part only, concluding that "the facility is not permitted to have another inmate service [sic] as an interpreter for communication of medical care," but concluded that Hernandez-Santana was not entitled to money damages or any policy change related to HIPAA.  (*Id*. at 36.)

because he failed to review his medical records of a prior stab wound laparoscopy "for concern [that the] past injury maybe disrupt injury of swallowing metallic piece."[8]  (*Id*. at 7.)

## II.    STANDARD OF REVIEW

Since the Court has granted Hernandez-Santana leave to proceed *in forma pauperis*, 28 U.S.C. § 1915(e)(2)(B)(ii) requires the Court to dismiss the Complaint if it fails to state a claim. Whether a complaint fails to state a claim under § 1915(e)(2)(B)(ii) is governed by the same standard applicable to motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), *see Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999), which requires the Court to determine whether the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted); *Talley v. Wetzel*, 15 F.4th 275, 286 n.7 (3d Cir. 2021).  At the screening stage, the Court accepts the facts alleged in the *pro se* Complaint as true, draws all reasonable inferences in the plaintiff's favor, and asks only whether the complaint, liberally construed, contains facts sufficient to state a plausible claim.  *Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021), *abrogation on other grounds recognized by Fisher v. Hollingsworth*, 115 F.4th 197 (3d Cir. 2024).  Conclusory allegations do not suffice.  *Iqbal*, 556 U.S. at 678; *see also Martinez v. UPMC Susquehanna*, 986 F.3d 261, 266 (3d Cir. 2021) ("A plaintiff cannot survive dismissal just by alleging the conclusion to an ultimate legal issue.").  As Hernandez-Santana is proceeding *pro se*, the Court construes his allegations liberally.  *Vogt v. Wetzel*, 8 F.4th 182, 185 (3d Cir. 2021) (citing *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 244-45 (3d Cir. 2013)).

---

[8] In his grievances, Hernandez-Santana asked for money damages (*id.* at 11, 12, 19, 20, 30), but he makes no specific request for relief in his Amended Complaint.  Under a liberal construction, the Court will assume he seeks money damages for his claims.

### III.    DISCUSSION

#### A.    HIPAA Claims

Mr. Hernandez-Santana's claims based on a violation of HIPAA are dismissed because there is no private right of action under the statute. *See, e.g.*, *Beckett v. Grant*, No. 19-3717, 2022 WL 485221, *3 (3d Cir. Feb. 17, 2022) ("HIPAA does not provide a private cause of action."); *Hatfield v. Berube*, 714 F. App'x 99, 105 (3d Cir. 2017) (finding that plaintiff cannot proceed with her claims under HIPAA because "HIPAA does not create a private right of action for alleged disclosures of confidential medical information")); *Williams v. The GEO Grp.*, No. 24-5860, 2025 WL 2325649, at *8 (E.D. Pa. Aug. 11, 2025) (same, collecting cases). Accordingly, all claims asserting violations of HIPAA are dismissed with prejudice.

#### B.    Constitutional Claims

Hernandez-Santana reasserts constitutional claims under the Eighth Amendment. The vehicle by which federal constitutional claims may be brought in federal court is 42 U.S.C. § 1983. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Groman v. Twp. of Manalapan*, 47 F .3d 628, 638 (3d Cir. 1995).

As the Court previously explained to Mr. Hernandez-Santana, to state an Eighth Amendment claim based on the failure to provide medical care, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs. *Hernandez-Santana*, 2025 WL 1844304, at *2 (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety." *Farmer*, 511 U.S. at 837. Deliberate

indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). "A medical need is serious, . . . if it is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention." *Monmouth Cnty. Corr. Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987) (internal quotations omitted). Not every complaint of inadequate prison medical care rises to the level of deliberate indifference. *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023) (*per curiam*). "Where a prisoner is receiving some amount of medical treatment, [courts] presume that the treatment is adequate absent evidence that it violates professional standards of care." *Id*. (affirming dismissal of deliberate indifference claims on screening) (citing *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990)); *see also Hayes v. Gilmore*, 802 F. App'x 84, 88 (3d Cir. 2020) (*per curiam*) ("Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners."); *Davis v. Superintendent Somerset SCI*, 597 F. App'x 42, 45 (3d Cir. 2015) (*per curiam*) ("[w]here a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, 'federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law'") (quoting *United States ex rel. Walker v. Fayette Cnty.*, 599 F.2d 573, 575 n.2 (3d Cir. 1979)). Where a prisoner is afforded inadequate care, the distinction between a state tort claim of medical negligence and a constitutional claim of deliberate indifference often turns on the provider's intent, *i.e.*, whether the inadequacy

resulted from an error in professional judgment or whether another motive drove the treatment decision. *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).

The Court understands Mr. Hernandez-Santana to be asserting claims based on his treatment at several points, as well as the overall course of his treatment. He asserts a claim against Dr. Little based on the initial examination in August 2023 following the alleged ingestion of metal because Little misdiagnosed him as having broken a dental filling and gave him Ex-Lax but did not take an x-ray. (Am. Compl. at 2.) He asserts a claim based on Nicholson's evaluation on October 19 and Little's treatment between October 27 and October 30, 2023 that led to his trip to the hospital, and he alleges that Little failed to follow treatment instructions in his discharge papers. (*Id*. at 3-4.) He may also be asserting a claim based on the period of time between his alleged ingestion of the metal object and his treatment at the outside hospital.

A claim based on Dr. Little's failure to take an x-ray, presumably of Hernandez-Santana's digestive tract but not specifically stated, during the initial visit to medical following the alleged ingestion of metal does not plausibly support a constitutional claim. He alleges that he was examined, Dr. Little believed he had broken a dental filling, referred him to the dentist, and provided Ex-Lax. He also presented the metal material to Dr. Little, suggesting that he did not swallow it and possibly leading Little to believe that it may have resulted in a broken dental filling. Hernandez-Santana thus received "some medical attention" from Dr. Little for his complaints. *Davis*, 597 F. App'x at 45. The diagnosis of a dental problem and the decision not to provide an unspecified x-ray at that time is afforded considerable latitude and, at best, was an error in medical judgement, *i.e.*, a dispute is over the adequacy of the treatment, which does not state a constitutional claim. *Id*.

The claim based on the treatment provided when Hernandez-Santana presented with complaints of rectal bleeding between October 19 and October 30 is also not plausible as a violation of the Constitution. Hernandez-Santana asserts that Little performed blood tests and claims that he was not qualified to reach a medical conclusion about the abdominal pain and rectal injury. But Hernandez-Santana also asserts that he was examined by Nicholson, who apparently recognized an issue, and referred him to Dr. Little, who did the blood tests and sent him to a local hospital due to his condition. He thus received some meaningful attention for his medical needs. Mr. Hernandez-Santana does not allege that either Defendant violated a standard of professional care and his allegation that Nicholson and Little were not "qualified" to diagnose him does not allege a plausible constitutional claim, particularly where he concedes that he was sent out of the institution for additional care. *See Woodell v. Wenerowicz*, No. 18-1098, 2019 WL 4139264, at *7, *20 (E.D. Pa. Aug. 30, 2019) (allegation that, *inter alia*, that the defendants failed to properly examine or diagnose prisoner because "they lacked the necessary qualifications to do so insofar as they were not neurologists" stated, "at bottom . . . mere disagreement with Dr. Wiener's treatment decisions or malpractice"); *Tenon v. Dreibelbis*, No. 12-1278, 2017 WL 1344643, at *10 (M.D. Pa. Apr. 12, 2017) (rejecting deliberate indifference claim based on argument that an ear, nose, and throat specialist lacked qualifications to read a jaw x-ray, concluding that the allegation only raised medical negligence claim); *see also Daly v. Pa. Dep't of Corr.*, No. 20-23, 2024 WL 4480103, at *10 (W.D. Pa. Aug. 7, 2024*), report and recommendation adopted*, 2024 WL 4284680 (W.D. Pa. Sept. 25, 2024) ("Prisoners 'do not have a constitutional right to choose their own medical providers nor to obtain treatment of their own choosing.'" (quoting *Abdulrazzaq v. Trump*, 422 F. Supp. 3d 281, 291 (D.D.C. 2019))).

On the other hand, Hernandez-Santana's allegation that Dr. Little acted with deliberate indifference when he assessed that Hernandez-Santana did not need further medical treatment following his return from the hospital is sufficient to allege a plausible claim based on a denial of medical care.  He asserts that Little refused to follow the hospital's discharge instructions (Am. Compl. at 3-4) and denied him "the medication that was prescribed by the outside Doctor to 'calm' the pain he was experiencing for quite some time" (*id*. at 19).  This claim will be served for a response.   Mr. Hernandez-Santana appears to allege also that, if Little was qualified, he would not have had to have waited 67 days before being sent to the emergency room.  (*Id*. at 4.) Although this claim would benefit from more specificity, considering the liberal standard for pro se pleading, it will survive as of this juncture in the case.

Finally, Mr. Hernandez-Santana's claim against Defendant Nicholson is not plausible. Based on the Amended Complaint and the grievance he attached to it, the Court understands Hernanez-Santana to assert that Nicholson was deliberately indifferent because he was not a qualified medical provider for gastrointestinal issues (*id.* at 4-5), and violated his right to medical confidentiality by using another inmate to translate during his examination on October 19, 2023. (*Id*. at 5 (alleging Nicholson knew Hernandez-Santana was "entitled to confidentiality of medical condition and chronic illness from non official while in custody").  Neither allegation states a claim.

A deliberate indifference claim based only on Nicholson's alleged lack of qualifications is not plausible for the reasons provided above and because Hernandez-Santana concedes that Nicholson attempted to provide medical care.  He attempted to conduct a rectal examination and, apparently, determined that Hernandez-Santana needed to see Dr. Little, which occurred approximately one week later on October 27.  The assertion that Nicholson used an inmate

translator during his interaction with Hernandez-Santana to direct him to remove his pants and underwear in order to conduct a rectal exam, which alleged caused him humiliation and violated DOC rules, does not state a deliberate indifference claim.  First, there is no allegation that the presence of the other inmate caused a prevention, delay, or denial of care.  Second, even if the use of the inmate translator violated DOC rules, a violation of internal prison procedures does not create a constitutional violation.  *Bowman v. Wetzel*, No. 20-135, 2020 WL 3258946, at *6 (W.D. Pa. June 16, 2020) (citing cases and holding that "corrections officials cannot be held liable for failing to conform to procedures outlined in inmate handbooks and other internal prison procedures"); *see also Curry v. McCann*, No. 18-5444, 2019 WL 77441, at *7 (E.D. Pa. Jan. 2, 2019) ("Even if Curry was asserting a claim against C.O. McCann based on this questioning, 'a prison's departure from the policies and procedures outlined in the facility's handbook does not, in and of itself, amount to a constitutional violation actionable under § 1983.'") (citing *Laufgas v. Speziale*, No. 04-1697, 2006 WL 2528009, at *7 n.7 (D.N.J. Aug. 31, 2006)).

Rather, the presence of the inmate translator during Nicholson's contact with Hernandez-Santana is appropriately analyzed under the rubric of medical privacy.  Courts construing prisoner's medical privacy claims have framed the right narrowly and have applied it to situations involving "unusual medical condition[s], which, if disclosed unnecessarily, would likely expose the inmate to ridicule, discrimination, or even potential violence and harm, particularly when word of the condition is likely to spread through "humor or gossip[.]"  *Smith v. Hayman*, No. 09-2602, 2012 WL 1079634, at *18 (D.N.J. Mar. 30, 2012) (citing *Powell v. Shriver*, 175 F.3d 107, 112 (2d Cir. 1999) (tying the availability of a § 1983 claim for invasion of medical privacy to conditions such as HIV and Gender Identity Disorder), *aff'd,* 489 F. App'x 544 (3d Cir. 2012).  In *Doe v. Delie*, 257 F.3d 309 (3d Cir. 2001), for example, an HIV-positive

inmate claimed that his constitutional right to medical privacy was violated when, *inter alia*, prison nurses announced his medications loud enough that other prisoners could hear and infer his condition; prison staff informed escorting officers of his medical condition; and, during physician visits, the clinic room door was kept open, allowing officers, inmates, and guards to see and hear the plaintiff and the treating physician.  257 F.3d at 311-12.  The United States Court of Appeals for the Third Circuit concluded that inmates "retain those rights that are not inconsistent with their status as prisoners or with the legitimate penological objectives of the corrections system."  *Id*. at 315; *see also id*. at 317 ("a prisoner's right to privacy in this medical information [his HIV status] is not fundamentally inconsistent with incarceration").  In *Smith*, the Third Circuit suggested that a prisoner could assert a plausible claim for deprivation of his constitutional right to medical privacy related to his attempt to be diagnosed and treated for Gender Identity Disorder.  *Id*. 489 F. App'x. at 548-49 (determining, however, on appeal of entry of summary judgement that the prisoner plaintiff failed to show evidence of improper disclosure).

Mr. Hernandez-Santana's medical privacy claim does not involve the type of condition or diagnosis for which courts have found that a need for privacy is necessary to prevent exposing the inmate to ridicule, discrimination, or potential violence.  By way of preliminary observation, the third party  was not gratuitously present, but there to facilitate communication between Mr. Hernandez and a health care provider. The request to perform the rectal exam was due to his alleged ingestion of a foreign object in his food and its possible exacerbation of a preexisting injury from a stab wound.  Because this type of condition does not carry the kind of stigma associated with those unusual medical conditions for which courts have found a narrow right to

medical privacy in the prison context, it cannot be the basis of a plausible claim and will be dismissed on statutory screening.

## IV.    CONCLUSION

Hernandez-Santana's deliberate indifference claim against Dr. Little based on the failure to provide post-hospitalization treatment and delay in referral will be served for a responsive pleading.  The balance of the claims in the Amended Complaint will be dismissed.  An appropriate order will be entered.

**BY THE COURT:**


**/s/ Gerald Austin McHugh**

**GERALD A. MCHUGH, J.**