**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **MICHAEL HERNANDEZ-SANTANA,** | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **CIVIL ACTION NO. 24-CV-6447** |
| | : | |
| **DR. PAUL LITTLE,** *et al.*, | : | |
| **Defendants.** | : | |

**<u>MEMORANDUM</u>**

**MCHUGH, J.**                                                                          **JUNE 17, 2025**

Before the Court is a Motion filed by Defendant Dr. Paul Little to dismiss the Amended

Complaint filed by Plaintiff Michael Hernandez-Santana, an inmate who was housed at SCI

Chester ("SCIC") when the incident involved in this case occurred.  Mr. Hernandez-Santana,

now housed at SCI Phoenix, filed a Response to the Motion and Little filed a Reply.  For the

following reasons, the Motion is granted in part and denied in part.

## I.      FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY[1]

The operative pleading in this case is Hernandez-Santana's Amended Complaint.  Mr.

Hernandez-Santana alleges that during lunch on Tuesday, August 22, 2023, he ingested pieces of

metal that were in his hamburger.  (Am. Compl. at 2.)  He felt a hard piece while chewing and

spit out metallic pieces.  (*Id*.)  He was taken to the SCIC medical unit where, assisted by a

---

[1] Hernandez-Santana's typewritten Amended Complaint contains attached exhibits.
(ECF No. 22.)  The Court considers the entire submission to constitute the Amended Complaint
and adopts the sequential pagination assigned by the CM/ECF docketing system to it and all
other cited pleadings.  The factual allegations set forth in this Memorandum are taken from
Amended Complaint.  Because the Court has already screened the Amended Complaint and
other Defendants have been dismissed, the facts stated here only concern the remaining claim
against Dr. Little.  Where the Court quotes from the Amended Complaint, punctuation, spelling,
and capitalization errors will be cleaned up.  The Court is cognizant that Hernandez-Santana's
first language is Spanish and he asserts he is not fluent in English.

correctional officer who served as a Spanish language translator, Dr. Little examined him for injuries. (*Id.*) Little ordered two Ex-Lax pills for Hernandez-Santana, but failed to take an x-ray even though Little had an x-ray machine available to use at SCIC. (*Id.*) In a grievance he filed, Hernandez-Sanatana asserted that a non-defendant nurse made a "personal judgement" that he did not swallow any of the metal pieces. (*Id.*)

Hernandez-Santana attached to his Amended Complaint Grievance # 1051739 dated September 4, 2023, in which he grieved the August 22, 2023 medical treatment he received after the incident involving his hamburger. (Am. Compl. at 11.) He complained that, at approximately 11:23 am, he discovered a metal object in his hamburger at lunch and he contacted a correctional officer who sent him to the medical unit. (*Id.*) He stated in the grievance that the medical department sent him back to his housing unit with no further treatment even though he had cuts and red marks on his tongue, gums, and inside cheeks and had a prior injury to his upper intestine and stomach which was "possibl[y] damaged by the consumption of these metal objects." (*Id.*) On a separate page, he states further that at 2:45 pm, he was experiencing a sharp pain in his stomach and alerted a correctional officer who sent him to the medical unit (it is unclear in the grievance if he claimed he went to medical twice). (*Id.* at 12.) He was seen by Dr. Little who determined that he had lost a dental filling while eating, referred him to the dentist, and gave him two Ex-Lax pills. (*Id.*)

Nearly two months later, Hernandez-Santana was seen by PA John Nicholson on Thursday, October 19, 2023, and then by Dr. Little on Friday, October 27, 2023, for complaints of stomach pain. (*Id.* at 3.) He appears to assert that he was taken to an emergency room because Little lacked "minimum experience" to order an onsite x-ray, and returned to SCIC with discharge instructions for treatment. (*Id.*) Little assessed Hernandez-Santana's complaints of

rectal bleeding from October 28 to October 30 using blood tests, but Hernandez-Santana claims

he was not qualified to reach a medical conclusion about his abdominal pain and rectal injury.

(*Id*.)  He complains that if Little was qualified, he would not have had to have waited 67 days

before being sent to the emergency room.  (*Id*. at 4.)  He also asserts that Little acted with

deliberate indifference when he assessed that Hernandez-Santana did not need further medical

treatment, apparently referring to hospital discharge instructions that Little failed to follow.  (*Id*.

at 3-4.)

Hernandez-Santana also filed Grievance # 1061001 on November 8, 2023, complaining

about the treatment he received from Dr. Little following his treatment at the outside hospital due

to his stomach pain and rectal bleeding.  (Am. Compl. at 19.)  He alleged his condition was a

result of ingesting the metal pieces in his hamburger and complained that Dr. Little "refused to

follow up" on the treatment prescribed by the hospital.  (*Id*.)  He stated that Little denied him

"the medication that was prescribed by the outside Doctor to 'calm' the pain he was experiencing

for quite some time."  (*Id*.)  His grievance was denied on initial review because records showed

that Defendant Nicholson evaluated Hernandez-Santana on October 28, 2023, and his notes

indicated that lab reports were normal showing no sign of bleeding, and because Dr. Little's

notes from his October 30 examination indicated an abdominal exam was normal.  (*Id*. at 20.)

This grievance was also denied on appeal to the facility manager and on final review.  (*Id*. at 21-

25.)

In screening Hernandez-Santana's Amended Complaint, the Court noted that he asserted

claims based on his treatment at several points, as well as the overall course of his treatment.

*Hernandez-Santana v. Little*, No. 24-6447, 2025 WL 2538435, at \*4 (E.D. Pa. Sept. 3, 2025)

("September Memorandum").  The claim based on Dr. Little's initial examination, where Little

3

allegedly misdiagnosed him as having broken a dental filling and gave him Ex-Lax but did not take an x-ray, was found not plausible because the diagnosis of a dental problem and the decision not to provide an unspecified x-ray at that time was, at best, an error in medical judgement, *i.e.*, a dispute over the adequacy of the treatment, which does not state a constitutional claim. *Id*. at *4. The claim based on Little's treatment between October 27 and October 30, 2023 that led to Hernandez-Santana's trip to the hospital, was also found not plausible since Hernandez-Santana asserted that he was examined by Nicholson, who apparently recognized an issue, and referred him to Dr. Little, who did the blood tests and sent him to a local hospital due to his condition. *Id*. He thus received some meaningful attention for his medical needs, and his allegation that Little was not "qualified" to diagnose him failed to allege a plausible constitutional claim, particularly where he conceded that he was sent out of the institution for additional care. *Id*. (citing cases).

The allegation that Dr. Little acted with deliberate indifference when he assessed that Hernandez-Santana did not need further medical treatment following his return from the hospital was determined to be sufficient to allege a plausible claim based on a denial of medical care. *Id*. at *5. He had asserted that Little refused to follow the hospital's discharge instructions (Am. Compl. at 3-4) and denied him "the medication that was prescribed by the outside Doctor to 'calm' the pain he was experiencing for quite some time" (*id*. at 19). Based on these allegations, the claim for denial of post-hospitalization treatment was determined to be plausible and served for a response. *See* September Memorandum at *5. Finally, while the Court noted that Hernandez-Santana's allegation that, if Little was qualified, he would not have had to have waited 67 days before being sent to the emergency room, while lacking much in the way of detail, was sufficient to go forward considering the liberal standard for *pro se* pleadings. *Id*.

4

## II.    STANDARD OF REVIEW

"A 12(b)(6) motion tests the sufficiency of the allegations contained in the complaint." *Peters v. Brown,* 793 F. App'x 118, 123 (3d Cir. 2019) (*per curiam*) (quoting *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993) (internal quotations omitted).  In deciding a motion to dismiss under Rule 12(b)(6), the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (citing *Twombly*, 550 U.S. at 556).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).  "Although the plausibility standard does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully."  *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  It is the defendant's burden to show that a complaint fails to state a claim.  *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (explaining that on a Rule 12(b)(6) motion to dismiss, the "defendant bears the burden of showing that no claim has been presented").

## III.    DISCUSSION

Hernandez-Santana asserts constitutional claims under the Eighth Amendment based on deliberate indifference to his serious medical needs.  To state a constitutional claim based on the failure to provide medical treatment, a prisoner must allege facts indicating that prison officials were deliberately indifferent to his serious medical needs.  *See Farmer v. Brennan*, 511 U.S. 825,

5

835 (1994).  A prison official is not deliberately indifferent "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Farmer*, 511 U.S. at 837.  Thus, under the *Farmer* standard, a "prison official must be at least subjectively reckless."  *DiFraia v. Ransom*, 171 F.4th 622, 628 (3d Cir. 2026); *id*. at 629 (stating deliberate indifference "requires subjective blameworthiness as well as serious mistreatment or neglect").

"A serious medical need is one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a layperson would easily recognize the necessity for a doctor's attention."  *Thomas v. City of Harrisburg*, 88 F.4th 275, 281 (3d Cir. 2023) (cleaned up).  "A serious medical need exists where 'failure to treat can be expected to lead to substantial and unnecessary suffering.'"  *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (quoting *Colburn v. Upper Darby Township*, 946 F.2d 1017, 1023 (3d Cir. 1991)).  Deliberate indifference is properly alleged "where (1) prison authorities deny reasonable requests for medical treatment, (2) knowledge of the need for medical care is accompanied by the intentional refusal to provide it, (3) necessary medical treatment is delayed for non-medical reasons, [or] (4) prison authorities prevent an inmate from receiving recommended treatment for serious medical needs."  *Montanez v. Price*, 154 F.4th 127, 141 (3d Cir. 2025) (citation omitted).  This standard is met when a delay or denial of medical care is intended to inflict pain without medical justification or is based solely on a nonmedical reason without any effort to mitigate harm.  *DiFraia*, 171 F.4th at 630.  "[P]rison officials may not 'deny reasonable requests for medical treatment . . . when such denial exposes the inmate to undue suffering or the threat of tangible

residual injury.'" *Durham v. Kelley*, 82 F.4th 217, 230 (3d Cir. 2023) (quoting *Palakovic v. Wetzel*, 854 F.3d 209, 227 (3d Cir. 2017)).

"Not every complaint of inadequate prison medical care rises to the level of deliberate indifference." *Anderson v. Price*, No. 22-3058, 2023 WL 5814664, at *2 (3d Cir. Sept. 8, 2023) (*per curiam*). "Where a prisoner has received some amount of medical treatment, it is difficult to establish deliberate indifference, because prison officials are afforded considerable latitude in the diagnosis and treatment of prisoners." *Palakovic*, 854 F.3d at 227 (citing *Durmer v. O'Carroll*, 991 F.2d 64, 67 (3d Cir. 1993)). "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.* at 228 (cleaned up). "Nonetheless, there are circumstances in which some care is provided yet it is insufficient to satisfy constitutional requirements. For instance, prison officials may not, with deliberate indifference to the serious medical needs of the inmate, opt for 'an easier and less efficacious treatment' of the inmate's condition." *Id.* (quoting *West v. Keve*, 571 F.2d 158, 162 (3d Cir. 1978)).

Deliberate indifference is not the same as medical malpractice. *Montanez*, 154 F.4th at 141 ("Mere negligence, . . . even if it constitutes medical malpractice[,] falls short of deliberate indifference. So does mere disagreement between the prisoner and medical personnel over the proper course of treatment." (first citing *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999); then citing *Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004)); *see also Palakovic*, 854 F.3d at 227 ("Allegations of mere negligent treatment or even medical malpractice do not trigger the protections of the Eighth Amendment.") "[I]t is well established that as long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."

7

*Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017); *see also White v. Napoleon*, 897 F.2d 103, 110 (3d Cir. 1990) ("If a plaintiff's disagreement with a doctor's professional judgment does not state a violation of the Eighth Amendment, then certainly no claim is stated when a *doctor* disagrees with the professional judgment of another doctor.  There may, for example, be several acceptable ways to treat an illness."); *DiFraia*,171 F.4th at 629 ("[I]t is not enough that a prisoner or another doctor would prefer a different approach than the one corrections officials took"); *McKinley v. Stanish*, No. 21-00960, 2022 WL 4369974, at *7 (M.D. Pa. Sept. 21, 2022) ("[W]here a dispute in essence entails no more than a disagreement between an inmate and doctors over alternate treatment plans, the inmate's complaint will fail as constitutional claims under § 1983 since the exercise by a doctor of his professional judgment is never deliberate indifference." (internal quotations omitted)).

Dr. Little argues that Hernandez-Santana has not alleged facts to state a plausible claim of deliberate indifference and only raises an inference that Little was negligent.  (ECF No. 38 at 9.)  He argues he is entitled to a presumption that his treatment decisions were valid, and that Hernandez-Santana was required to allege facts that his conduct was a substantial departure from accepted professional judgment and has failed to do so.  (*Id*.)  He points out that Hernandez-Santana concedes that he was taken to the emergency room for examination when he made complaints on October 27, 2023, of rectal bleeding and abdominal pain, the ER physicians found no trauma or bleeding, and "[w]e know that contrary to his claims, the ER did not order any specific treatment."  (*Id*. at 10.)  When Hernandez-Santana returned to SCIC he was seen by PA Nicholson the next day and had a normal examination and his blood work was normal.  (*Id*.)  Little then saw him three days later and performed an examination.  (*Id*.)  Little argues there was no need for medication or treatment on that day, Hernandez-Santana was returned to his cell, and

did not come back with further complaints of abdominal pain or bleeding, making any claim of deliberate indifference based on the October 30 treatment not plausible since Hernandez-Santana bases his claim merely on his disagreement with the treatment he received. (*Id*. at 10-11.) He also argues that Hernandez-Santana claim based on delayed treatment should be dismissed. (*Id*. at 11 (citing cases).)

In response to the Motion, Hernandez-Santana – whose understanding of English is clearly limited – essentially repeats the procedural history of the case (ECF No. 46 at 1-2), asserts that he has exhausted him claim through the prison grievance process (*id*. at 2), and asserts that Little has not shown there was any valid reason why he was not treated (*id*.)

Having reviewed the allegations and the arguments presented, the Court will deny the Motion with regard to the failure to provide post-hospitalization treatment. Hernandez-Santana alleged in the Amended Complaint that he returned from the hospital with discharge instructions that Little refused to follow (Am. Compl. at 3-4) and denied him "the medication that was prescribed by the outside Doctor to 'calm' the pain he was experiencing for quite some time" (*id*. at 19). Little's Motion improperly asks the Court to ignore this allegation, arguing the claim is not plausible because "[w]e know that contrary to his claims, the ER did not order any specific treatment." (ECF No. 38 at 10.) Stated simply, asserting a fact contrary to the operative pleading is not appropriate in a Motion under Rule 12(b)(6). *Iqbal*, 556 U.S. at 678.

However, to the extent Hernandez-Santana's claim is based on the 67-day delay in treatment between when he first presented with his complaint of having ingested metal and his being sent to the emergency room, it is not plausible. The 67-day period fails to state a plausible claim because Hernandez-Santana does not allege that he was in need of medical treatment during that period, that he sought treatment, or that Dr. Little refused to provide treatment. In

other words, there are no factual allegations supporting an inference that Dr. Little was deliberately indifferent to any medical needs Hernandez-Santana had during this time.

## IV.    CONCLUSION

Dr. Little's Motion to dismiss will be granted in part and denied in part.  Hernandez-Santana's deliberate indifference claim based on the 67-day period between when he allegedly ingested metal and when he was sent to the hospital will be dismissed.  The Motion will be denied as to the claim asserting that Dr. Little failed to provide post-hospitalization treatment. Dr. Little will be directed to file an answer to the Amended Complaint.  Fed. R. Civ. P. 12(a)(4)(A).  An appropriate order follows.

**BY THE COURT:**


**/s/ Gerald Austin McHugh**

**GERALD A. MCHUGH, J.**